**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| PAUL ROESSLER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DISA Global Solutions, Inc.,<br><br>Defendants. | **Case No.: 4:25-cv-01235**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Paul Roessler, ("Plaintiff"), individually, on behalf of all others similarly situated, brings this action against Defendant DISA Global Solutions, Inc. ("DISA" or "Defendant"), seeking monetary damages, restitution, and/or injunctive relief for the proposed Class, as defined below. Plaintiff makes the following allegations upon information and belief, the investigation of counsel, and personal knowledge or facts that are a matter of public record.

## I. INTRODUCTION

1. The release, disclosure, and publication of sensitive, private data can be devastating. Not only is it an intrusion of privacy and a loss of control, but it is a harbinger of identity theft: for victims of a data breach, the risk of identity theft more than quadruples.[1] A data breach can have grave consequences for victims for years after the actual date of the breach – with the obtained information, thieves can wreak many forms of havoc: open new financial accounts, take out loans, obtain medical services, obtain government benefits, and/or obtain driver's licenses

[1] Dave Maxfield & Bill Latham, *Data Breaches: Perspectives from Both Sides of the Wall*, 25 S.C. Lawyer 28-35 (May 2014), https://www.mydigitalpublication.com/publication/?i=208503 (last accessed Feb. 26, 2025).

in the victims' names, forcing victims to maintain a constant vigilance over the potential misuse of their information.

2. DISA, based in Houston, Texas, is one of the largest third-party administrators (TPAs) in the United States. Founded in 1986, DISA provides background and employment checks to over 55,000 companies and a third of Fortune 500 companies.[2] DISA utilizes sensitive information to perform a variety of investigative services, including drug testing, criminal history, social security verification, credit checks, and motor vehicle checks.[3] Due to the nature of DISA's business, it receives, handles, and maintains the Personally Identifiable Information ("PII") relating to millions of employees throughout the United States. On information and belief, all information related to DISA's customers and their employees are contained within and stored in DISA's databases and information systems.

3. On February 21, 2025, Defendant informed their clients that DISA had been subject to a data breach that was discovered on April 22, 2024. (the "Data Breach.")[4] In its notification letter, Defendant admits that its subsequent investigation determined that an unauthorized third party accessed the DISA network between February 9 and April 22, 2024. Defendant further admits that the hackers were able to access customers' personal information, though DISA claims it was unable to "definitively conclude the specific data procured."[5]

4. Despite knowing how valuable customer information is, Defendant failed to adequately protect Plaintiff's and Class Member's PII. This PII was compromised due to

[2] DISA, "Franchises," https://www.disa.com/franchise (last accessed Feb. 26, 2025).
[3] *Id.*
[4] Office of the Maine Attorney General, Data Breach Notifications, DISA Global Solutions, Inc., https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/b823b27d-5fe2-4f09-8753-b362741d7f95.html (last accessed Feb. 26, 2025).
[5] *Id.*

Defendant's negligent and/or careless acts and omissions and its utter failure to protect customers' sensitive data. Hackers targeted and obtained Plaintiff's and Class Member's PII because of its value in exploiting and stealing the identities of Plaintiff and Class Members. The present and continuing risk to victims of the Data Breach will remain for their respective lifetimes.

5. As a result of the Data Breach, through which their Personally Identifiable Information ("PII") was compromised, disclosed, and obtained by unauthorized third parties, Plaintiff and Class Members have suffered concrete damages and are now exposed to a heightened and imminent risk of fraud and identity theft for a period of years, if not decades. Furthermore, Plaintiff and Class Members must now and in the future closely monitor their financial accounts to guard against identity theft, at their own expense. Consequently, Plaintiff and the other Class Members will incur ongoing out-of-pocket costs for, *e.g.*, purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.

6. By this Complaint, Plaintiff seeks to remedy these harms on behalf of himself/herself and all similarly situated individuals whose PII was accessed during the Data Breach.

## II. JURISDICTION & VENUE

7. This Court has subject matter jurisdiction for this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1711, et seq., because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367. This Court also has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).

8. The Court has jurisdiction over Defendant because Defendant maintains its principal place of business in this District, has sufficient minimum contacts with this District, and has purposefully availed itself of the privilege of doing business in this District such that it could reasonably foresee litigation being brought in this District.

9. Venus is proper in this District under 28 U.S.C. § 1391(a) through (d) because Defendant's principal place of business is located in this District and a substantial part of the events or omissions giving rise to the claims occurred in, was directed to, and/or emanated from this District.

## III. PARTIES

**Plaintiff Paul Roessler**

10. Plaintiff Paul Roessler is a resident citizen of Oklahoma City, Oklahoma.

11. On February 21, 2025, Plaintiff received a letter from DISA informing him of the Data Breach, and that customer data around the country was subject to unauthorized access.

**Defendant**

12. Defendant DISA Global Solutions, Inc., is a privately held company with its principal place of business at 1740 Katy Freeway, Suite 900, Houston, Texas 77079.

## IV. FACTUAL BACKGROUND

**DISA Failed to Adequately Protect Client and Customer Data, Resulting in the Data Breach**

13. DISA's own Privacy Policy states that the company "respects the privacy of individuals and clients who are the subjects of DISA Services, including but not limited to

background checks."[6] It promises to "collect, store, and use confidential information following best practices and also in compliance with applicable law, including the FCRA."[7]

14. In addition to background and security checks, DISA performs credit checks, which means that Defendant is a Credit Reporting Agency (CRA) under the jurisdiction of the Fair Credit Reporting Act, as noted in their privacy policy. In 15 USC § 1681 of the FCRA, Congress remarked that there was "a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy" and that it was the purpose of the FCRA "to require that consumer reporting agencies adopt reasonable procedures…with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information…".

15. Notwithstanding these promises and federal mandates, in February 2024, DISA experienced a data breach affecting more than 3.3 million people.[8] Upon information and belief, the hackers gained access to Plaintiff's and Class Members' PII with the intent of selling, marketing, and misusing this PII.

16. On February 21, 2025, Defendant provided notice to clients and their employees that their personal information was accessed and compromised. Despite this, Plaintiff and Class Members remain in the dark regarding what specific PII was stolen, the malware used, and the steps taken to secure their PII moving forward.

---

[6] DISA, "Privacy Policy," https:///www.disa.com/privacypolicy (last accessed Feb. 26, 2025).
[7] *Id.*
[8] Carly Page, TechCrunch, "US Employee Screening Giant DISA Says Hackers Accessed Data of More Than 3M People," Feb. 25, 2025, https://techcrunch.com/2025/02/25/us-employee-screening-giant-disa-says-hackers-accessed-data-of-more-than-3m-people/ (last accessed Feb. 26, 2025).

17. Defendant was familiar with their obligations – to protect client and employee information. Plaintiff and Class Members have provided their private information to DISA with the reasonable expectation that Defendant would comply with their obligations related to their PII. Defendant owed Plaintiff and Class Members a duty to provide reasonable security, consistent with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected their PII.

18. Despite these duties, Defendant failed to comply with their obligations, resulting in the Data Breach and Class Members now face years of constant surveillance of their financial and personal records.

**The Data Breach Puts Class Members at Increased Risk of Fraud and Identity Theft**

19. An identity thief uses victims' PII, such as name, address, and other sensitive and confidential information, without permission, to commit fraud or other crimes that range from immigration fraud, obtaining a driver's license or identification card, obtaining government benefits, and filing fraudulent tax returns to obtain tax refunds.

20. Identity thieves can use a victim's PII to open new financial accounts, incur charges in the victim's name, take out loans in the victim's name, and incur charges on existing accounts of the victim. Plaintiff's and Class Members' finances are now at risk due to the Data Breach.

21. Identity theft is the most common consequence of a data breach – it occurs to 65% of data breach victims.[9] Consumers lost more than $56 billion to identity theft and fraud in 2020, and over 75% of identity theft victims reported emotional distress.[10] Victims of identity theft can experience financial damage as thieves run up debts into the tens of thousands. These victims can

---

[9] Eugene Bekker, *What Are Your Odds of Getting Your Identity Stolen?*, IDENTITYFORCE (Apr. 15, 2021), https://www.identityforce.com/blog/identity-theft-odds-identity-theft-statistics (last accessed Mar. 11, 2025).

[10] *Id.*

have their credit history destroyed, impairing their ability to obtain a loan, a mortgage, or even to lease housing. Victims of identity theft can experience substantial legal complications due to breaches. These risks and vulnerabilities are ongoing.

22. Plaintiff and members of the Class are now in the position of having to take steps to mitigate these damages caused by the Data Breach. Once the use of compromised non-financial PII is detected, the emotional and economic consequences to the victims are significant. Studies done by the ID Theft Resource Center, a non-profit organization, found that victims of identity theft had marked increased fear for personal financial security. The report attributes this to more people having been victims before, contributing to greater awareness and understanding that they may suffer long term consequences from this type of crime.[11]

23. Defendant failed to protect and safeguard Plaintiff's and Class Members' private information, in fact failing to adhere to even their most basic obligations. As a result, Plaintiff and Class Members have suffered or will suffer actual injury, including loss of privacy, costs and loss of time.

## V. CLASS ACTION ALLEGATIONS

24. Plaintiff brings this action as a class action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of a proposed nationwide class (the "Class"), defined as:

> All natural persons in the United States whose Personally Identifiable Information was compromised as a result of the Data Breach.

25. Excluded from the Class are Defendant, any entity in which a Defendant has a controlling interest, any of the officers or directors of Defendant, the legal representatives, heirs,

[11] Identity Theft: The Aftermath 2013, Identity Theft Resource Center, https://www.idtheftcenter.org/wp-content/uploads/2021/09/Aftermath2013.pdf (last accessed Mar. 11, 2025).

successors, and assigns of Defendant, and any Judge to whom this case is assigned, and his or her immediate family.

26. The definition of the Class may be further modified or amended by additional pleadings, evidentiary hearings, a class certification hearing, and orders of this Court.

27. **Numerosity and Ascertainability:** Plaintiff does not know the exact size of the Class or the identity of the Class Members because such information is in the exclusive control of Defendant. Nevertheless, based on published reports, the Class comprises millions of client employees throughout the United States. The Class is so numerous that joinder of all members is impracticable and the disposition of their claims in a class action will benefit the parties and the Court. The names, phone numbers, and addresses of Class Members are identifiable through documents maintained by Defendant.

28. C**ommonality and Predominance:** This action involves common questions of law and fact as to all members of the class, which predominate over any question solely affecting individual Class Members. Common questions of law and fact include, but are not limited to, the following:

(a) Whether Defendant engaged in the conduct alleged herein;

(b) Whether Defendant had a legal duty to use reasonable security measures to protect Plaintiff's and Class Members' PII;

(c) Whether Defendant's failure to implement effective security measures to protect Class Members' Private Information was negligent;

(d) Whether Defendant timely informed Plaintiff of the Data Breach;

(e) Whether Plaintiff and Class Members are entitled to injunctive relief; and

(f) Whether, as a result of Defendant's conduct, Plaintiff and the Class are entitled to damages and equitable relief.

29. **Typicality:** Plaintiff's claims are typical of the Class Members' claims because all Class Members were comparably injured through Defendant's substantially uniform misconduct described above. Plaintiff is advancing the same claims and legal theories on behalf of himself/herself and all other members of the Class that they seek to represent, and there are no defenses that are unique to Plaintiff. Plaintiff and Class Member claims and injuries arise from the same facts and are based on the same law.

30. A**dequacy:** Plaintiff is an adequate Class Representative because his/her interests do not conflict with the interests of other Class Members he/she seeks to represent; Plaintiff has retained competent counsel that is experienced in complex class action litigation; and Plaintiff intends to vigorously prosecute this action. The interests of Class Members will be fairly and adequately protected by Plaintiff and his/her counsel.

31. **Superiority:** A class action is superior to other available methods for fair and efficient adjudication of this controversy. No unusual difficulties are likely to be encountered in the management of this class action. The damages suffered by Class Members are relatively small compared to the expense required to individually litigate their claims against Defendant, so it would be virtually impossible for the Class Members to seek individual redress against Defendant's wrongful conduct.

## VI. CAUSES OF ACTION

### COUNT ONE
### NEGLIGENCE

32. Plaintiff incorporates all foregoing factual allegations as if fully set forth herein.

33. Defendant owed Plaintiff and Class Members a duty to exercise reasonable care in safeguarding their personal information, arising from the sensitivity of the information, the expectation the information was going to be kept private, and the foreseeability of its data safety

shortcomings resulting in a breach. This duty included designing, implementing, maintaining, monitoring, and testing Defendant's protocols, policies, procedures, practices, networks, and systems to ensure Class Member information was sufficiently secure.

34. Defendant owed a duty to Plaintiff and Class Members to implement administrative, physical, and technical safeguards, such as intrusion detection processes that detect data breaches in a timely manner, to protect and secure Plaintiff's and Class Member's PII. Defendant owed a duty to provide industry standard data security measures. Defendant owed a duty under Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45, which prohibits the unfair practice of insufficient and unreasonable data protection measures.

35. Defendant owed a duty to disclose the material fact that its data security practices were inadequate to safeguard Plaintiff's and Class Member's PII.

36. Defendant owed a duty under the FCRA to "maintain reasonable procedures designed to …limit the furnishing of consumer reports to the purposes listed under section 1681b." 15 U.S.C. § 1681e. Unauthorized disclosure of consumer reports to third parties such as computer hackers in the Data Breach is not a listed purpose under section 1681b of the FCRA. Defendant failed to maintain the required reasonable procedures to prevent such unauthorized disclosures.

37. Defendant also had independent duties under Plaintiff's and Class Member's state laws that require Defendant to reasonably protect Plaintiff's and Class Members PII and promptly notify them about the breach.

38. Defendant and the Class entered into a special relationship when the Class Members entrusted Defendant to protect their Private Information, which provided an independent duty of care. Plaintiff's and Class Members' willingness to entrust Defendant with their PII was predicated on the understanding that Defendant would take adequate security precautions.

Defendant was capable of protecting its networks and systems, and the PII it stored on them, from unauthorized access.

39. Defendant breached its duties by, among other things: (a) failing to implement and maintain adequate data security practices to safeguard Plaintiff's and Class Members' PII, including administrative, physical, and technical safeguards; (b) failing to detect the Data Breach in a timely manner; and (c) failing to disclose that its data security practices were inadequate to safeguard Plaintiff's and Class Member's PII.

40. Plaintiff and Class Members were probable and foreseeable victims of Defendant's inadequate data security. Defendant knew, or should have known, of the risk of collecting and storing Plaintiff and Class Member PII and the need for providing appropriate safeguards.

41. The harm to Plaintiff and Class Members was a proximate, reasonably foreseeable result of Defendants' breaches of aforementioned duties.

42. Therefore, Plaintiff and Class Members are entitled to damages in an amount to be proven at trial.

## COUNT TWO
## NEGLIGENCE PER SE

43. Plaintiff realleges and incorporates by reference paragraphs 1-31 as if fully set forth herein.

44. Under the FTC Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate data security practices to safeguard Plaintiff's and Class Members' PII.

45. Under the FCRA, 15 U.S.C. § 1681e, Defendant had a duty to "maintain reasonable procedures" to avoid the disclosure of Plaintiff's and Class Members' PII contained in consumer reports to unauthorized persons such as computer hackers in the Data Breach.

46. Under state data security statutes, Defendant had a duty to implement and maintain reasonable security procedures and practices to safeguard Plaintiff's and Class Members' PII.

47. Defendant breached their duties to Plaintiff and Class Members under the FTCA, FCRA, and state data security statutes, by failing to provide fair, reasonable, or adequate data security practices to safeguard Plaintiff's and Class Members' PII.

48. Plaintiff and Class Members were foreseeable victims of Defendant's violations of the FTCA, FCRA, and state data security statutes. Defendant knew or should have known that its failure to implement reasonable security measures would cause damage to Plaintiff and Class Members.

49. Defendant's failure to comply with applicable law constitutes negligence per se.

50. But for Defendant's violations of law, Plaintiff's and Class Members' PII would not have been accessed by unauthorized parties.

51. Due to Defendant's violations of law, Plaintiff and Class Members suffered injury of the type contemplated by these laws, including but not limited to the exposure to a heightened and imminent risk of fraud, identity theft, financial and other harm. Plaintiff and Class Members must monitor their financial accounts and credit histories more closely and frequently to guard against identity theft. Plaintiff and Class Members also have incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring, and other protective measures to detect or deter identity theft. The unauthorized acquisition of Plaintiff's and Class Members' PII has also diminished the value of their PII.

52. The harm to Plaintiff and Class Members was a proximate, reasonably foreseeable result of Defendant's breaches of applicable law.

53. Therefore, Plaintiff and Class Members are entitled to damages in an amount to be proven at trial.

**COUNT THREE**
**UNJUST ENRICHMENT**

54. Plaintiff realleges and incorporate by reference paragraphs 1-31 as if fully set forth herein.

55. Plaintiff and Class Members conferred a monetary benefit on Defendant in the form of monetary payments -directly or indirectly – for services received.

56. Defendant collected, maintained, and stored the PII of Plaintiff and Class Members, and, as such, Defendant had knowledge of the monetary benefits conferred by Plaintiff and Class Members.

57. The money paid to Defendants in connection with services provided concerning Plaintiff's PII should have been used to pay, at least in part, for the administrative costs and implementation of adequate data management and security. Defendant failed to implement - or adequately implement – practices, procedures, and programs to secure sensitive PII, as evidenced by the Data Breach.

58. As a result of Defendant's failure to implement security practices, procedures, and programs to secure sensitive PII, Plaintiff and Class Members suffered actual damages in an amount equal to the difference in the value between goods and services with reasonable data privacy that were paid to Defendant, and the services Defendant provided without reasonable data privacy.

59. Under principles of equity and good conscience, Defendant should not be permitted to retain money paid for services relating to Plaintiff and Class Members because Defendant failed to implement the data management and security measures that are mandated by industry standards.

60. Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and the Class all unlawful or inequitable proceeds received by Defendant. A constructive trust should be imposed upon all unlawful and inequitable sums received by Defendant traceable to Plaintiff and the Class.

## COUNT FOUR
## VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. §§ 1681, *et seq.*

61. Plaintiff realleges and incorporates by reference paragraphs 1-31 as if fully set forth herein.

62. Defendant is a CRA – a "consumer reporting agency" and a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined in 15 U.S.C. §§ 1681a(f) and (p), respectively.

63. As individuals, Plaintiff and Class Members are consumers entitled to the protections of the FCRA. 15 U.S.C. §1681a(c).

64. DISA compiled and maintained a "consumer report" on Plaintiff and Class Members, as defined in 15 U.S.C. § 1681a(d): any "written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for – (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under section 1681b of this title."

65. The compromised data was a consumer report under the FCRA because it was a communication of information bearing on Class Members' credit worthiness, credit standing,

credit capacity, character, general reputation, personal characteristics, or mode of living used, or expected to be used or collected in whole or in part, for the purpose of serving as a factor in establishing Class Members' eligibility for credit.

66. As a CRA, Defendant may only furnish a consumer report under the limited circumstances set forth in 15 U.S.C. § 1681b(a). None of the purposes listed under section 1681b permit CRAs to furnish consumer reports to unauthorized or unknown entities, or computer hackers such as those who accessed Class Members' Personal Information.

67. Defendant furnished Class Members' consumer reports, in violation of section 1681b, by disclosing those consumer reports to unauthorized entities and computer hackers, and by allowing unauthorized entities and computer hackers to access their consumer reports.

68. The FCRA requires Defendant, as a CRA, to "maintain reasonable procedures designed to …limit the furnishing of consumer reports to the purposes listed under section 1681b of this title." 15 U.S.C. § 1681e(a).

69. The Federal Trade Commission has pursued enforcement actions against CRAs under the FCRA for failing to "take adequate measures to fulfill their obligations to protect information contained in consumer reports, as required by the" FCRA, in connection with data breaches.

70. Defendant failed to maintain reasonable procedures designed to limit the furnishing of Class Members' consumer reports to permitted purposes, and/or failed to take adequate security measures that would prevent disclosure of Class Members' consumer reports to unauthorized entities or computer hackers.

71. As a direct and proximate result of Defendant's actions and failures to act described herein, and utter failure to take adequate and reasonable measures to ensure its data systems were

protected, Defendant offered, provided, and furnished Plaintiff's and Class Members' consumer reports to unauthorized third parties.

72. Defendant's disclosure of consumer reports under these circumstances was not permitted by, and thus was in violation of, Sections 1681b and 1681e of the FCRA.

73. Under Section 1681o of the FCRA, Defendant is liable to Plaintiff and Class Members for negligently failing to comply with the requirements that a CRA not disclose consumer reports and take measures designed to avoid the unauthorized disclosure of consumer reports. Defendant therefore is liable to Plaintiff and Class Members for their actual damages as a result of Defendant's failure to comply with the FCRA, as well as costs and reasonable attorneys' fees in amounts to be proven at trial.

74. In addition, Defendant's failure to comply with the foregoing requirements was willful because Defendant knew or should have known, but recklessly disregarded, that its cybersecurity measures were inadequate and unreasonable and additional steps were necessary to protect consumers' Personal Information from security breaches.

75. Defendant also acted willfully and recklessly because, as a CRA, it knew or should have known about its legal obligations regarding data security and data breaches under the FCRA. These obligations are well established in the plain language of the FCRA and in the promulgations of the Federal Trade Commission.[12] Defendant obtained or had available these and other substantial written materials that apprised them of their duties under the FCRA. Nonetheless, by its utter failure to meet its acknowledged responsibilities and known duties regarding the need to

[12] *See, e.g.*, 55 Fed. Reg. 18804 (May 4, 1990), 1990 Commentary on the Fair Credit Reporting Act. 16 C.F.R. Part 600, Appendix to Part 600, Sec. 607 2E, available at https://www.govinfo.gov/content/pkg/CFR-2011-title16-vol1/pdf/CFR-2011-title16-vol1-part600-app-id1024.pdf (last accessed Mar. 11, 2025).

adopt adequate data security measures, Defendant acted consciously in depriving Plaintiff and Class Members of their rights under the FCRA.

76. Therefore, Defendant is liable to Plaintiff and Class Members in an amount equal to actual damages, or damages of not less than $100 and not more than $1,000 for each Plaintiff and Class Member, as well as punitive damages, costs of the action, and reasonable attorneys' fees. 15 U.S.C. § 1681n(a).

## COUNT FIVE
## DECLARATORY JUDGMENT

77. Plaintiff realleges and incorporates by reference paragraphs 1-31 as if fully set forth herein.

78. Plaintiff and the Class have stated claims against Defendant based on negligence, negligence per se, unjust enrichment and violation of the FCRA.

79. Defendant failed to fulfill their obligations to provide adequate and reasonable security measures for the PII of Plaintiff and the Class, as evidenced by the Data Breach.

80. Due to the Data Breach, Defendant's systems are more vulnerable to unauthorized access and require more stringent measures to be taken to safeguard the PII of Plaintiff and the Class moving forward.

81. An actual controversy has arisen in the wake of the Data Breach regarding Defendant's current obligations to provide reasonable data security to protect the PII of Plaintiff and the Class. Defendant maintains that their security measures were- and still are- reasonably adequate and denies that they previously had or have any obligation to implement better safeguards to protect the PII of Plaintiff and the Class. Specifically, Plaintiff and the Class seek a declaration that Defendant's existing security measures do not comply with their obligations, and that

Defendant must implement and maintain reasonable security measures to comply with their data security obligations.

**PRAYER FOR RELIEF**

82. Plaintiff, on behalf of himself and on behalf of the proposed Class, requests that the Court:

(a) Certify this case as a class action, appoint Plaintiff as a class representative, and appoint Plaintiff's Counsel as Class Counsel for Plaintiff to represent the Class.

(b) Find that DISA breached its duties to safeguard and protect the PII of Plaintiff and Class Members that was compromised in the Data Breach;

(c) Award Plaintiff and Class Members appropriate relief, including actual and statutory damages, restitution and disgorgement;

(d) Award equitable, injunctive and declaratory relief as may be appropriate;

(e) Award all costs, including experts' fees and attorneys' fees, and the costs of prosecuting this action;

(f) Award pre-judgment and post-judgment interest as prescribed by law; and

(g) Grant additional legal or equitable relief as this Court may find just and proper.

DATED: March 14, 2025

Respectfully submitted,

By: */s/ W. Mark Lanier*

W. Mark Lanier
TX Bar No. 11934600
SDTX No. 8461
**THE LANIER LAW FIRM, P.C.**
10940 W. Sam Houston Pkwy N.
Suite 100
Houston, Texas 77064
T: (713) 659-5200
F: (713) 659-2204
mark.lanier@lanierlawfirm.com

Thomas E. Loeser*
Vara G. Lyons *
**COTCHETT PITRE & MCCARTHY LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272
Fax: (206)-299-4184
tloeser@cpmlegal.com.com
vlyons@cpmlegal.com

**Pro Hac Vice admission forthcoming*

*Attorneys for Plaintiff and the proposed Class*